UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT MCKENNEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:16-cv-412-NT |
| | ) | |
| KEVIN JOYCE, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER SCREENING COMPLAINT
PURSUANT TO 28 U.S.C. §§ 1915(e), 1915A**

In this action, Plaintiff Robert McKenney, an inmate in the York County Jail, alleges that he has been wrongly classified as maximum security whenever he has been assigned to the Cumberland County Jail. Plaintiff asserts his claim against "Officer Ryder in classification," Captain Butts (described as the "overseer of all security"), and Sheriff Kevin Joyce who "oversees everything at the jail [and] also the County of Cumberland." (Complaint at 4, ECF No. 1.)

Plaintiff filed an application to proceed *in forma pauperis* (ECF No. 2), which application the Court granted (ECF No. 5). In accordance with the *in forma pauperis* statute, a preliminary review of Plaintiff's complaint is appropriate. 28 U.S.C. § 1915(e)(2). Additionally, Plaintiff's complaint is subject to screening "before docketing, if feasible or … as soon as practicable after docketing," because he is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

After a review pursuant to 28 U.S.C. §§ 1915 and 1915A, I recommend the Court dismiss Plaintiff's complaint.

## STANDARD OF REVIEW

When a party is proceeding *in forma pauperis*, "the court shall dismiss the case at any time if the court determines," *inter alia*, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

In addition to the review contemplated by § 1915, Plaintiff's complaint is subject to screening under the Prison Litigation Reform Act because Plaintiff currently is incarcerated and seeks redress from governmental entities and officers. *See* 28 U.S.C. § 1915A(a), (c). The § 1915A screening requires courts to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim …; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The relevant question ... in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Twombly,* 550 U.S. at 569 n.

14). Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard," *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). *See also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of pro se plaintiffs "is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim").

## FACTUAL BACKGROUND[1]

Plaintiff alleges that in 2012, while serving two consecutive nine-month sentences in the Cumberland County Jail (CCJ), he was accused of having an inappropriate relationship with a member of the corrections staff. (Complaint, ECF No. 1)  Pending a criminal investigation, Plaintiff was transferred to other correctional facilities in Maine, and was classified as maximum security for some of the time.  Plaintiff was released from custody in 2013. (Statement of Claim at 1, ECF No. 1-1.)

In May 2016, Plaintiff was arrested and processed at the CCJ. "[D]ue to a violent crime [he] was arrested for," Plaintiff was initially classified as maximum. (*Id.* at 2.)  Soon after his arrival at the jail, officials at the CCJ transferred Plaintiff to the York County Jail (YCJ) to prevent contact between Plaintiff and the CCJ staff member with whom he allegedly had an improper relationship.  At YCJ, Plaintiff was placed in maximum security for five days before being reclassified to general population, where he has remained ever since "with no disciplinary action." (*Id.*)  On occasion, when transported to court proceedings in Cumberland County, Plaintiff has

---

[1] The facts set forth herein are derived from Plaintiff's complaint.

been held temporarily in maximum security at the CCJ, purportedly to prevent contact with the staff member. (*Id.*)

Plaintiff maintains Defendants unlawfully classified him as maximum security. He contends prison policies or regulations provide that maximum security is reserved for prisoners who present security risks or who present a danger to themselves or others. (*Id.* at 3.) After Plaintiff wrote a letter challenging his classification, his classification at the CCJ was changed. (*Id.*) Plaintiff describes his claim as a denial of due process based on the denial of a classification hearing. (*Id.*)

On September 26, 2016, Plaintiff filed a supplemental pleading. (ECF No. 8.) In the pleading, Plaintiff alleges that on September 12, he was sentenced to 364 days in county jail, to be followed by a six-month consecutive sentence. After sentencing, Plaintiff asked Defendant Ryder whether he will qualify for the prerelease program administered by Cumberland County when he has six months or less remaining on his sentence. According to Plaintiff, Defendant Ryder informed Plaintiff that because of his inappropriate relationship with the corrections staff member at the CCJ, he would not be assigned to the CCJ and thus would not be permitted to participate in the program. Plaintiff contends the denial of his ability to participate in the program constitutes a violation of his right to due process of law.

## DISCUSSION

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The analysis of a due process claim proceeds in two stages. The Court first considers "whether there exists a liberty or property interest of which a person has been deprived," and if so, it then

considers "whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

Unless Plaintiff has alleged facts to support a claim that the conditions of his confinement have deprived him of an interest protected by the Due Process Clause, his due process claim cannot proceed, regardless of whether Defendants violated or ignored specific provisions found in policies maintained by the Cumberland County Sheriff regarding the operation of the CCJ. *Swarthout*, 562 U.S. at 219; *Sandin v. Conner*, 515 U.S. 472, 483 – 84 (1995).

Plaintiff evidently alleges that his liberty interest consists of a right to be assigned to the general population at CCJ and to participate in the work release program offered at CCJ. Plaintiff alleges a violation of due process while he was a pretrial detainee and while he was in execution of a sentence. The claims will be addressed separately.

**A.    Plaintiff's Post-Conviction Confinement**

A convicted prisoner does not have a constitutional right to a particular classification. "[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). For instance, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 – 22 (2005) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause itself in transfer from low- to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). *See also Williams v. Lindamood*, 526 Fed. App'x 559, 563 (6th Cir. 2013) ("[A] prisoner has no constitutional right to be incarcerated in a particular prison or to be held in a specific security classification." (quoting

*Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005)); *see also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

Because Plaintiff did not have a right to a certain classification in 2012, and because he has no such right at present, unless his classification constitutes an "atypical and significant hardship … in relation to the ordinary incidents of prison life," Plaintiff does not have an actionable federal claim based on alleged procedural irregularities or misapplication of state law classification standards. *Sandin*, 515 U.S. at 484. In other words, while Plaintiff serves a sentence of incarceration, he does not have a constitutional liberty interest except to the extent that the conditions to which he is subjected impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *Id.*

Plaintiff has not alleged facts that would support a finding that he has been subjected to or is currently subject to conditions of confinement that impose an atypical and significant hardship in relation to the ordinary incidents of prison life. More specifically, Plaintiff's maximum security classification at CCJ, Plaintiff's placement in the general population at YCJ, and Plaintiff's inability to participate in a work release program in the future do not constitute atypical and significant hardships. Indeed, applying the *Sandin* standard, the First Circuit held that the removal of a prisoner from a work release program does not impose an atypical and significant hardship. *Dominique v. Weld,* 73 F.3d 1156, 1160 (1st Cir. 1996).[2] Accordingly, to the extent Plaintiff complains of a denial of due process based on Defendants' classification and housing decisions, he has failed to allege a recognized liberty interest. Plaintiff's claim based on his post-conviction confinement thus fails.

---

[2] Even before *Sandin*, this Circuit determined that challenges related to prison work release programs do not implicate a constitutionally protected liberty interest. *Bowser v. Vose*, 968 F.2d 105 (1st Cir. 1992) (per curiam).

**B.     Plaintiff's Pretrial Confinement**

Plaintiff's pleadings suggest he was a pretrial detainee between May and September, 2016. During this five-month period, Plaintiff asserts he was assigned for eight days at CCJ with a maximum security classification due to the violent nature of the crime for which he was arrested. For the remainder of his pretrial detention, Plaintiff was at the YCJ and, except for an initial five-day period, he has been in general population.

Because pretrial detainees have not been convicted of the crime or crimes with which they are charged, they are entitled to constitutional protections greater than the protections afforded sentenced inmates. Significantly, a pretrial detainee has a substantive due process right to be free from "punishment" unless and until he is convicted. *Ford v. Bender*, 768 F.3d 15, 24 (1st Cir. 2014) (citing *Bell v. Wolfish,* 441 U.S. 520, 535 – 36 (1979), and *Surprenant v. Rivas,* 424 F.3d 5, 13 (1st Cir. 2005)).[3] In addition, a pretrial detainee is entitled to procedural due process before a disciplinary sanction is imposed based on a violation of prison rules. *Id.* at 27.

"Courts considering challenges to confinement brought by pretrial detainees must first consider whether the circumstances of the particular confinement render the confinement punitive; since some restraint is necessary to confine a pretrial detainee, not all uncomfortable conditions or restrictions are necessarily punitive." *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007), *reversed on other grounds, Ashcroft v. Iqbal,* 556 U.S. 662 (2009). The First Circuit has describe a pretrial detainee's liberty interest in non-punitive conditions of confinement as "coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment." *Surprenant*, 424 F.3d at 18. Conditions are thus punitive if they are below the "minimal measure of necessities

---

[3] For pretrial detainee claims, "punishment" is a term of art. *Ford*, 768 F.3d at 24. "What is prohibited is 'punishment in the constitutional sense,' not mere 'restrictions and conditions accompanying pretrial detention.'" *Id.* (quoting *Bell,* 441 U.S. at 538). "[T]he test of whether a condition is in fact punishment is whether 'the disability is imposed for the purpose of punishment.'" *Id.* (quoting *Bell,* 441 U.S. at 538).

7

required for civilized living." *Id.* A pretrial detainee can also establish that he has been punished "by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 – 74 (2015).[4]

The first issue is whether objectively, the CCJ's maximum security classification of Plaintiff for eight days pending his transfer to York County could be considered punishment. Plaintiff alleges that following his arrest in 2016, the CCJ classified him as maximum security due to the violent nature of the crime for which he was arrested and detained. Plaintiff does not describe the conditions actually imposed on him during the eight days he spent at CCJ with the maximum security classification.

"[P]rison administrators [are] to be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell,* 441 U.S. at 547. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting[.]" *Id.* at 540. Here, Plaintiff alleges the CCJ made the maximum security classification because he was charged with a violent crime. Given the understandable deference the law affords prison administrators in decisions designed to preserve internal order and safety, the placement of a pretrial detainee charged with a violent crime in maximum security for a relatively brief period of time was rationally related to a legitimate governmental objective, was not excessive, and would not support

---

[4] Concerning the Supreme Court's use of the phrase "only objective evidence," a condition of confinement claim against a particular individual defendant often will include an additional, subjective component (proof of deliberate indifference) in order to establish that particular defendant's liability. *Surprenant*, 424 F.3d at 18. However, where the conduct in question is "purposefully or knowingly" applied, satisfaction of an objective standard is sufficient to establish liability. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). This discussion assumes, *arguendo*, that Plaintiff's allegations describe a condition purposefully or knowingly applied by the named Defendants.

a finding that the CCJ intended to punish Plaintiff. In short, under the circumstances, the placement does not constitute a deprivation of a liberty interest without due process of law. *See*, *e.g.*, *Covino v. Vermont Dep't of Corr.*, 933 F.2d 128, 129 (2d Cir. 1991) (per curiam) ("'[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons' is not a right protected by the due process clause itself …" (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)); *Trythall v. O'Mara*, No. 1:11-CV-458, 2012 WL 1216270, at *7 (D.N.H. Mar. 19, 2012), *report and recommendation adopted sub nom. Trythall v. Hillsborough Cty. Dep't of Corr.*, 2012 WL 1253014 (D.N.H. Apr. 11, 2012) (concluding that alleged placement of detainee in maximum security in order to prevent violation of a restraining order failed to state a claim); *Coble v. Butler*, No. 3:09-CV-8021, 2009 WL 722713, at *1 (D. Ariz. Mar. 18, 2009) (dismissing detainee's due process claim based on placement in maximum security without a prior hearing); *Yant v. Scholack*, No. 1:95-CV-9462, 1998 WL 157053, at *2 (S.D.N.Y. Apr. 3, 1998) ("The Due Process Clause itself does not give plaintiff a protectable liberty interest relating to his brief administrative confinement while undergoing intake and classification procedures ...").

Plaintiff also asserts that a due process claim is warranted because the maximum security classification was not authorized by state or county policies and procedures. Plaintiff specifically alleges that state and/or county policies and regulations restrict the maximum security classification to prisoners who present security risks or who present a danger to themselves or others. As a pretrial detainee, Plaintiff could establish a deprivation of liberty by demonstrating he was summarily subjected to one or more conditions of confinement that are authorized only after administrative compliance with certain mandatory procedures or standards. *Id.* at 130;

9

*Russell v. Coughlin,* 910 F.2d 75, 77 (2d Cir.1990) (citing *Hewitt*, 459 U.S. at 471 – 72).[5] Plaintiff, however, has not identified a mandatory procedure that precludes the maximum security classification under the circumstances alleged (i.e., a pretrial detainee charged with a violent crime) without a prior hearing.  To the contrary, given that Plaintiff has alleged that he was charged with a violent crime, and given that Plaintiff has alleged the maximum security classification is permitted in the event a security risk is presented, the classification appears to be authorized.  Furthermore, even if the Court assumes that the initial classification was based on Plaintiff's prior inappropriate relationship with a prison staff member, the relationship with a member of the corrections staff also presents a security issue that would warrant a placement in maximum security for at least a brief period of time.[6]  In sum, Plaintiff has not alleged facts that would support a finding that Defendants failed to observe a mandatory requirement of state law before Plaintiff was classified as maximum security.

The final potential basis for Plaintiff's due process claim is the procedure, as described by the Supreme Court in *Bell v. Wolfish*, that a correctional facility must follow before disciplinary sanctions can be imposed against a pretrial detainee.  If Plaintiff's complaint is construed liberally, Plaintiff alleges that his persistent maximum security classification at CCJ is a disciplinary sanction arising from his alleged inappropriate relationship with a CCJ staff member in 2012.  According to Plaintiff, in 2016, Defendant Ryder conceded the fact when he explained to Plaintiff the reason he would not be assigned to the CCJ.  Plaintiff's claim fails.  First, Plaintiff's desire to

---

[5] The holding of *Hewitt v. Helms*, 459 U.S. at 472, that state statutes and regulations containing "explicitly mandatory language … requiring specific substantive predicates" confer a liberty interest on prisoners, has been abrogated in the context of post-conviction confinement.  *See Sandin*, 515 U.S. at 480 – 81.

[6] Plaintiff also alleges that during the pretrial detention period he occasionally was held at CCJ in connection with pretrial proceedings at the Cumberland County Courthouse, during which visits he maintained the maximum security classification while in the CCJ.  However, there is no factual basis to conclude that the conditions under which Plaintiff was held during the temporary visits would have been different without the classification.

reside at the CCJ is not a protected liberty interest. *Meachum,* 427 U.S. at 225. In addition, the assignment of Plaintiff to a more favorable classification in another facility cannot reasonably be construed as punishment. Plaintiff, therefore, has not stated an actionable claim for a violation of the procedural requirements of the Due Process Clause.

## CONCLUSION

Based on the foregoing analysis, after a review pursuant to 28 U.S.C. § 1915 and 28 U.S.C. § 1915A, I recommend the Court dismiss Plaintiff's complaint.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 27th day of October, 2016.